UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

HENRY ALEXANDER TOWNSEND,

    Plaintiff,

  v.

GREGG JONES, Office of Population Management; TROY BOWSER, Superintendent; JOHN JACKSON; Assistant Supt. Security; JANE CHAMBERS, STM, Lt.,

    Defendants.

Case No. 2:19-cv-01674-CL

FINDINGS AND RECOMMENDATION

CLARKE, Magistrate Judge:

    Plaintiff, an inmate in the custody of the Oregon Department of Corrections (ODOC), filed suit under 42 U.S.C. § 1983 and alleged that defendants violated his rights under the Eighth and Fourteenth Amendments by failing to protect him from assault and by placing him in segregated housing for an extended period of time. Defendants now move for summary judgment on grounds that plaintiff failed to exhaust his administrative remedies and otherwise fails to show a violation of his constitutional rights. For the reasons explained below, defendants' motion should be granted in part and denied in part.

1   - FINDINGS AND RECOMMENDATION

DISCUSSION

Plaintiff has been in the custody of ODOC since 2011. Plaintiff alleges that in 2016, he was transferred from Two Rivers Correctional Institution (TRCI) after being attacked by members of a Security Threat Group (STG) known as the Paisas.[1] Plaintiff alleges that he was transferred back to TRCI on January 30, 2018, despite known threats to his safety, and assaulted by inmates affiliated with the Paisas on January 31, March 3, and June 7, 2018. Plaintiff maintains that ODOC and TRCI officials failed to protect him from assault and instead placed him in segregated housing for over two years, in violation of his rights under the Eighth and Fourteenth Amendments. Plaintiff also alleges state law tort claims arising from defendants' response to the assaults.

Defendants move for summary judgment on grounds that plaintiff failed to exhaust his administrative remedies with respect to the January and June 2018 assaults. Defendants further argue that plaintiff cannot obtain § 1983 damages based on defendants' supervisory or official capacities, and that plaintiff fails to establish a violation of his constitutional rights arising from the March 2018 assault or his placement in segregated housing. Plaintiff likewise moves for summary judgment and also seeks a preliminary injunction requiring his transfer to the Multnomah County Detention Center.

To prevail on their motions for summary judgment, the parties must show there is no genuine dispute as to any material fact and they are entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Albino v. Baca*, 747 F.3d

---

[1] Plaintiff's allegations are taken from his First Amended Complaint and other supporting documents. Plaintiff also filed a Second Amended Complaint without seeking leave of court. *See* Fed. R. Civ. P. 15(a). Regardless, the allegations in his Second Amended Complaint mirror those alleged in his First Amended Complaint and do not include substantive additions to his claims. Therefore, plaintiff's First Amended Complaint remains the operative pleading.

2  - FINDINGS AND RECOMMENDATION

1162, 1166 (9th Cir. 2014) ("If undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56."). Cross motions for summary judgment are evaluated separately, with the non-moving party for each motion given "the benefit of all reasonable inferences." *Am. Civil Liberties Union of Nev. v. City of Las Vegas*, 333 F.3d 1092, 1097 (9th Cir. 2003).

    A.  <u>Exhaustion of Administrative Remedies</u>

Under the Prison Litigation Reform Act (PLRA), inmates must exhaust all available administrative remedies before filing a federal action to redress prison conditions or incidents. *See* 42 U.S.C § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."). The exhaustion requirement is mandatory and requires compliance with both procedural and substantive elements of the prison administrative process. *Woodford v. Ngo,* 548 U.S. 81, 85, 90 (2006). Inmates must exhaust all available grievance remedies before filing a § 1983 action, including appealing grievance decisions to the highest level. *Jackson v. Fong*, 870 F.3d 928, 933 (9th Cir. 2017).

If the defendant shows that the inmate did not exhaust an available administrative remedy, "the burden shifts to the prisoner to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Albino*, 747 F.3d at 1172; *see also Ross v. Blake*, 136 S. Ct. 1850, 1859 (2016) ("[A]n inmate is required to exhaust those, but only those, grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.'") (citation omitted). This burden is met when the prisoner shows that he or she took "reasonable

3    - FINDINGS AND RECOMMENDATION

and appropriate steps" to pursue administrative remedies, but prison officials nonetheless interfered with the prisoner's attempts to exhaust or failed to follow the correct grievance protocol. *Nunez v. Duncan*, 591 F.3d 1217, 1224 (9th Cir. 2010).

In 2018, ODOC employed a three-step grievance and appeal process. *See former* Or. Admin. R. 291-109-0140. Under that process, the inmate could file a grievance within thirty days of the alleged condition or incident. *Id.* 291-109-0150(2).[2] A grievance that was returned to the inmate on procedural grounds could not be appealed. Instead, if the procedural errors could be corrected, the inmate could resubmit the grievance within fourteen days from the date it was returned. *Id.* § 291-109-0160(5). If the grievance was accepted, the inmate could appeal any response to the grievance within fourteen days from the date the response was sent to the inmate. *Id.* 291-109-0170(1)(b). If the first appeal was denied, the inmate could file a second appeal within fourteen days. *Id.* 291-109-0170(2)(c). A decision following a second appeal was final. *Id.* 291-109-0170(2)(f).

Defendants argue that plaintiff filed no grievances regarding the January 2018 assault and failed to complete the grievance process for the June 2018 assault; they concede plaintiff exhausted the grievance process for the March 2018 assault. Plaintiff presents no evidence to refute defendants' assertion that he failed to grieve the circumstances of his assault on January 31, 2018, and summary judgment should be granted on that claim. *See* Eynon Decl. ¶ 9 (ECF No. 102). However, questions of fact preclude summary judgment on exhaustion grounds with respect to the assault on June 7, 2018.

---

[2] ODOC's grievance process now requires inmates to file a grievance within fourteen days of the relevant condition or incident, unless the inmate "can satisfactorily demonstrate why the grievance could not be timely filed." Or. Admin. R. 291-109-0205(1). The rule change does not apply to this case.

4    - FINDINGS AND RECOMMENDATION

On June 20, 2018, the Grievance Office received Grievance No TRCI 2018.06.089, dated June 14, 2018. Plaintiff referenced an incident on June 7, 2018, and stated:

> Despite her well known knowledge of conflict and/or U.S. constitution L.T. Chambers refused and/or failed to follow protocol by refusing and/or failing to provide appropriate housing for a High Risk/High Alert prisoner which [led] to a 'Third' consecutive attack at the same facility on the same unit by the same security threat group.

*Id.* Att. 7 at 2. In a Returned Grievance Form dated July 6, 2018, plaintiff's grievance was denied on the following ground: "Incident(s) or problems(s) to which an inmate was not a party." *Id.* Att. 7 at 1.

On July 9, 2018, the Grievance Office received another grievance from plaintiff dated July 6, 2018. Plaintiff again referenced an incident occurring on June 7, 2018, and stated:

> Despite her well known knowledge of conflict and/or U.S. constitution L.T. Chambers refused and/or failed to follow protocol by refusing and/or failing to provide appropriate housing for a High Risk/High Alert prisoner (Henry Townsend sid #14258900) which [led] to a 'Third' consecutive attack at the same facility on the same unit by the same security threat group.

*Id.* Att. 8 at 4. Although this grievance appeared to be a resubmission and correction of Grievance No. TRCI 2018.06.089, it was processed as a new grievance and denied as untimely because it was received more than thirty days beyond June 7, 2018. Eynon Decl. ¶ 21 & Att. 8 at 3. The denial was sent to plaintiff on July 24, 2018. *Id.*

On July 27, 2018, petitioner appealed the denial and argued that his grievance was timely, because he submitted it on July 6, 2018 and "[o]nce a Grievance is placed in The Mail 'The Mail Box Rule' Attaches and the Grievance is deemed Filed. The Grievance was not untimely filed." *Id.* ¶ 22 & Att. 8 at 2. Plaintiff's appeal was denied because inmates cannot appeal a denied grievance. *Id.* & Att. 8 at 1.

5    - FINDINGS AND RECOMMENDATION

Defendants argue that this record establishes that plaintiff did not exhaust the grievance process for the June 2018 assault, because Grievance No. TRCI 2018.06.089 was denied and his subsequent grievance for the same issue was untimely. I disagree.

According to relevant ODOC rules, "If a grievance is returned to the inmate because it does not comply with these rules, the inmate may elect to resubmit the grievance to the grievance coordinator within 14 calendar days from the date the grievance was sent back to the inmate if the procedural errors can be corrected." *See former* Or. Admin. R. 291-109-0160(5). Plaintiff's grievance was returned on July 6, 2018, and on the same day plaintiff signed and resubmitted his original grievance verbatim, with the required correction stating that he was the affected inmate. Granted, plaintiff did not indicate that his July 6 grievance was a resubmission of Grievance No. TRCI 2018.06.089, and, according to defendants, the Grievance Office "receives many grievances every week" and "it is unlikely that the grievance office would have been able to recall the previously denied grievance." Eynon Decl. ¶ 21.

While that may be the case, the failure to recognize plaintiff's July 6 grievance as a correction of Grievance No. TRCI 2018.06.089 should not be attributed to him unless he failed to comply with relevant grievance rules, and defendants do not identify any such failure by plaintiff. Instead, defendants cite former Or. Admin. R. § 291-109-0140(1)(b), which provided that a grievance must "include a complete description of the incident, action, or application of the rule being grieved, including date and time." Eynon Decl. ¶ 21. Plaintiff's corrected grievance complied with these requirements.

Further, even if plaintiff can be faulted to failing to identify his second grievance as a correction of Grievance No. TRCI 2018.06.089, it is unclear whether plaintiff should be held responsible for its untimeliness. Grievance No TRCI 2018.06.089, dated June 14, 2018, was not

received by the Grievance Office until June 20, 2018. Despite the fact that it apparently was denied on June 28, 2018, it was not returned to plaintiff until July 6, 2018, more than two weeks after it was received. The same day, plaintiff signed and submitted his second grievance.

Viewing the facts in the light most favorable to plaintiff, it appears that he took "reasonable and appropriate steps" to grieve the June 7, 2018 assault in accordance with applicable ODOC rules. *Nunez*, 591 F.3d at 1224. At minimum, questions of material fact regarding exhaustion preclude summary judgment.

    B.  <u>Failure to Protect Plaintiff From Assault</u>

Plaintiff alleges that defendants knew he was at risk of being assaulted by inmates affiliated with the Paisas, a known Security Threat Group, and failed to protect him from harm.

To establish a violation of the duty to protect inmates, a prisoner must show that he is "incarcerated under conditions posing a substantial risk of serious harm" and that prison officials were deliberately indifferent to those risks and the inmate's safety. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A prison official is deliberately indifferent "if the official is subjectively aware of a substantial risk of serious harm to an inmate and disregards that risk by failing to respond reasonably." *Wilk v. Neven*, 956 F.3d 1143, 1147 (9th Cir. 2020). "Once an official is subjectively aware of a substantial risk of serious harm, 'clearly established' law requires 'only that the [official] take reasonable measures to mitigate the substantial risk.'" *Id*. at 1148-49 (citations omitted).

On January 30, 2018, plaintiff was transferred to TRCI from Eastern Oregon Correctional Institution. The next day, plaintiff was assaulted by another inmate. Jones Decl. Att. 2 at 9 (ECF No. 103). He was placed in disciplinary segregation until March 2, 2018, apparently due to a Request for Administrative Housing. *See* Jackson Decl. Att. 2 (ECF No. 104).

7   - FINDINGS AND RECOMMENDATION

On March 2, 2018, plaintiff was released back into general population. The next day, plaintiff was assaulted by inmates while he waited in a shower sign-up line. *Id.* Att. 3 at 44. After a disciplinary hearing, plaintiff was found guilty of Inmate Assault and sanctioned with ninety days in disciplinary segregation. Jones Decl. Att. 3 at 10.

On June 7, 2018, plaintiff was again released to general population housing. On the same day, he was assaulted in his cell and transferred to disciplinary segregation. Jackson Decl. Att. 3 at 7. After a disciplinary hearing, plaintiff was again found guilty of Inmate Assault and sanctioned with ninety days in disciplinary segregation. Jones Decl. Att. 3 at 11. Plaintiff remained in segregated housing after his sanction ended. *Id.* Att. 1 at 3-4.

On May 20, 2019, plaintiff received an Involuntary Administrative Segregation Hearing. The Hearings Officer recommended that plaintiff be assigned to Administrative Segregation for a period of 180 days or until suitable housing could be located. *Id.* Att. 2 at 8-10. On June 13, 2019, plaintiff was transferred to Snake River Correctional Institution (SRCI). *Id.* ¶ 3.

Defendants move for summary judgment on grounds that they lacked the requisite culpability for deliberate indifference, because they had no knowledge of the assaults against plaintiff until after they occurred. *See* Defs.' Mot. Summ. J. at 16 (ECF No. 101). The relevant question, however, is whether defendants knew of a substantial risk to plaintiff's safety prior to March 3, 2018 and nonetheless disregarded that risk. *Farmer*, 511 U.S. at 847. The record establishes that defendants did know of such a risk, and it remains a question of fact whether they disregarded it or took reasonable steps to protect plaintiff from harm. *Id.*

When plaintiff was transferred to TRCI on January 30, 2018, "Intelligence was provided that confirmed Inmate Townsend was unable to be successfully housed in General Population…due to a disrespect issue[] involving known affiliates of the Security Threat Group

8   - FINDINGS AND RECOMMENDATION

Paisas back in 2017." Jones Decl. Att. 2 at 8. "The intelligence provided indicated Inmate Townsend would be assaulted as soon as he was placed in General Population." *Id.* According to a Suspected Security Threat Intelligence Report (SSTIR) dated January 30, 2018, plaintiff "will no longer be able to walk main-line" after a conflict with a fellow inmate who was a "high ranking" member of the Paisas. Jackson Decl. ¶ 5.

A Request for Administrative Housing, dated February 5, 2018, stated that the "STG Group Piasa's are continuing to assault [plaintiff], and make threats against him where ever he goes. There are no housing units at this time that he is able to walk on. We would like to review him for AHU for his own safety and security." *Id.* Att. 2 at 1, 5. The request was approved by Asst. Supt. Jackson, and a thirty-day placement in segregated housing was recommended by Supt. Bowser. *Id.* After plaintiff was released from this placement and returned to general population, he was attacked on March 3, 2018 and again on June 7, 2018, consistent with the information provided to TRCI officials on January 30, 2018.

These undisputed facts of record establish that prior to March 2018, Asst. Supt. Jackson and Supt. Bowser knew plaintiff had been threatened and targeted by inmates affiliated with the Paisas and that Paisa members had, in fact, assaulted plaintiff the day after his transfer to TRCI. By June 7, 2018, Asst. Supt. Jackson and Supt. Bowser knew that plaintiff had been attacked a second time in March after he returned to general population. Despite the confirmed threats of violence directed at plaintiff, defendants do not explain what steps, if any, were taken to protect him from assault prior to his release from segregation on March 2, 2018 and June 7, 2018.

Defendants nonetheless argue that plaintiff did not complete an inmate conflict form to provide notice of a conflict or request administrative housing for his own protection. Defendants also contend that they believe plaintiff "will insult another Paisa to instigate an assault but refuse

9    - FINDINGS AND RECOMMENDATION

to go voluntarily into administrative housing where the chances of his being attacked are greatly reduced." Bowser Decl. ¶ 6 (ECF No. 106); Jackson Decl. ¶ 6.

Defendants' declarations make clear it was immaterial whether plaintiff completed a form to indicate he had conflicts with Paisa members. Defendants assert that "ODOC does not house [inmates] by the STG affiliation and there are Paisas on every housing unit," suggesting that they would not have placed plaintiff in a housing unit with no Paisa members. Jackson Decl. ¶ 5. Moreover, Supt. Bowser and Asst. Supt. Jackson had independent knowledge that plaintiff was at risk of assault, based on the intelligence cited to support the request for administrative placement they approved in February 2018. *Id.* & Att. 2; Jones Decl. Att. 2 at 8. Defendants provide no authority suggesting than an inmate's failure to voluntarily submit to the restrictive conditions of administrative housing absolves prison officials of their duty to protect the health and safety of inmates.

Finally, defendants present no evidence suggesting that plaintiff instigated the assaults in January, March, or June of 2018. Rather, the record reflects that on March 3, 2018, two inmates began punching plaintiff while he waited in a shower sign-up line, and on June 7, 2018, an inmate associated with the Paisas attacked plaintiff in his cell and two others stood guard as the assault took place. Jackson Decl. Att. 2 at 2, Att. 3 at 32, 44.

While the record indicates Supt. Bowser and Asst. Supt. Jackson knew plaintiff was at risk of assault, it is unclear whether defendants Jones or Chambers-Smith had knowledge of that risk or the authority to address it. Nonetheless, I am not inclined to recommend summary judgment in favor of Jones and Chambers-Smith absent clarification of their involvement.[3]

---

[3] Defendants also moved for summary judgment in favor of Chambers-Smith on grounds that she did not begin working at TRCI until May 15, 2018 and cannot be liable for failing to protect plaintiff in March 2018. Chambers-Smith Decl. ¶ 5 (ECF No. 105). Defendants'

10    - FINDINGS AND RECOMMENDATION

Defendants also move for summary judgment on grounds of qualified immunity. "Qualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *White v. Pauly,* 137 S. Ct. 548, 551 (2017) (per curiam) (citation and quotation marks omitted). The record does not support qualified immunity. As discussed above, at least two defendants knew plaintiff was at risk of assault, and it remains unclear whether reasonable measures were taken to protect plaintiff before he was assaulted on March 3 and June 7, 2018. *See Wilk*, 956 F.3d at 1149-50. This Court must assess qualified immunity based on the particular circumstances faced by defendants, and here, questions of fact remain regarding those circumstances and the reasonableness of defendants' response.

In sum, viewing the undisputed facts and all plausible inferences in plaintiff's favor, genuine issues of material fact preclude summary judgment on plaintiff's failure to protect claims arising from the assaults on March 3 and June 7, 2018.

    C.  Denial of Procedural Due Process

Plaintiff also alleges violations of his constitutional rights to due process arising from his placement in segregated housing at TRCI.[4]

According to the record before the Court, plaintiff was held in disciplinary segregation at TRCI for all but three days between January 30, 2018 and June 13, 2019. *See* Jones Decl. Att. 1 at 3-4 (plaintiff's housing history). According to plaintiff's misconduct history, he received

---

argument is premised on plaintiff's alleged failure to complete the grievance process for the June 7, 2018 assault. Because questions of fact exist regarding exhaustion, summary judgment is not appropriate on this ground.

[4] Several of plaintiff's motions and memoranda challenge the conditions of confinement at SRCI. This action is based on plaintiff's confinement at TRCI and the allegations in his First Amended Complaint, and he must file a separate cause of action against SRCI officials to challenge the conditions at SRCI.

11   - FINDINGS AND RECOMMENDATION

several disciplinary sanctions that account for some, but not all, of the time he was held in disciplinary segregation. *Id.* Att. 3 at 10-11.

Inmates are entitled to procedural due process when a prison action implicates a protected liberty interest. *See Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). The Supreme Court has held that the federal "Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement." *Id.* Instead, a protected liberty interest may arise when segregated housing imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 483-86 (1995); *see also Chappell v. Mandeville*, 706 F.3d 1052, 1064 (9th Cir. 2013).

An inmate's placement in disciplinary housing, by itself, does not trigger a protected liberty interest. *See, e.g., May v. Baldwin*, 109 F.3d 557, 565 (9th Cir. 1997) (holding that placement in disciplinary segregation does not implicate a liberty interest because it "falls within the terms of confinement ordinarily contemplated by a sentence"); *Resnick v. Hayes*, 213 F.3d 443, 448-49 (9th Cir. 2000) (placement in segregated housing pending a disciplinary hearing did not implicate a protected liberty interest). However, the Ninth Circuit has held that a pre-determined, twenty-seven month placement in an intensive segregation unit imposes "an atypical and significant hardship under any plausible baseline" and creates a protected liberty interest requiring meaningful, periodic review. *See Brown v. Or. Dep't of Corr.*, 751 F.3d 983, 988 (9th Cir. 2014).

As noted, plaintiff was held in disciplinary segregation from February 2018 to June 2019, aside from three days in general population. Jones Decl. Att. 1 at 3-4. During that time, plaintiff received an administrative placement review in February 2018, three disciplinary hearings in March, June, and December of 2018, and one involuntary administrative segregation hearing in

12    - FINDINGS AND RECOMMENDATION

May 2019. *Id.* Att. 2 at 8-10, Att. 3 at 10-11; Jackson Decl. Att. 2. In other words, plaintiff's placement in segregation was reviewed several times during the 16-month period he was housed at TRCI. Even if the duration of plaintiff's disciplinary segregation implicated a protected liberty interest, I cannot find that plaintiff was denied meaningful review.

Accordingly, defendants' motion for summary judgment should be granted on plaintiff's procedural due process claim.

D. Official Capacity Liability

Defendant also move for summary judgment on plaintiff's official capacity claims. I agree that plaintiff cannot seek damages against ODOC defendants in their official capacities. "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) (citation omitted). Further, the State is not a "person" for purposes of § 1983 liability, and it is immune from suit in federal court under the Eleventh Amendment. *Id.* at 65-66.

While an inmate may sometimes pursue official-capacity claims for injunctive relief to remedy unlawful conditions of confinement, plaintiff is no longer at TRCI and cannot obtain injunctive relief against TRCI officials. *See Nelson v. Heiss,* 271 F.3d 891, 897 (9th Cir. 2001) (explaining that "when a prisoner is moved from a prison, his action will usually become moot as to conditions at that particular facility"). Accordingly, defendants' motion for summary judgment should be granted with respect to plaintiff's claims against defendants in their official capacities.

For the same reason, plaintiff is not entitled to preliminary injunctive relief. *See* Pl.'s Mot. for Temporary Restraining Order (ECF No. 126). Defendants have transferred plaintiff to another facility, and his motion for injunctive relief should be denied.

E.  <u>State Law Claims</u>

Finally, defendants move for summary judgment on plaintiff's state law claims of negligence and false imprisonment, based on plaintiff's failure to establish the necessary elements of those claims. I agree that summary judgment is appropriate, but for a different reason.

Plaintiff's sole cause of action for torts committed by ODOC officials acting within the scope of their employment is an action against ODOC under the Oregon Tort Claims Act (OTCA). Or. Rev. Stat. § 30.265(2), (3). Thus, plaintiff cannot bring state law tort claims against the named defendants. Further, plaintiff cannot sue ODOC in this action because it is an arm of the State and immune from suit in federal court. *See, e.g., Estate of Pond v. Oregon*, 322 F. Supp. 2d 1161, 1165 (D. Or. 2004) ("The [OTCA] is a waiver of sovereign immunity but does not waive Eleventh Amendment immunity. Thus, suits by private parties against the state must be brought in state court."). Accordingly, summary judgment should be granted on plaintiff's state law claims.

CONCLUSION

Defendants' Motion for Summary Judgment (ECF No. 101) should be GRANTED in part and DENIED in part. Defendants' motion should be granted with respect to plaintiff's official capacity claims under § 1983, his failure to protect claim arising from the January 2018 assault, his procedural due process claim, and his state law tort claims. Defendants' motion should be denied with respect to plaintiff's failure to protect claims arising from the assaults in March and

June of 2018. Plaintiff's Motion for Partial Summary Judgment, Dispositive Motion, and Motion for Temporary Restraining Order (ECF Nos. 40, 95, 126) should be DENIED.

This Findings and Recommendation will be referred to a district judge. Objections, if any, are due within (14) days from service of the Findings and Recommendation. If objections are filed, any response is due fourteen (14) days after being served with a copy of the objections. The parties are advised that the failure to file objections within the specified time may waive the right to appeal the District Court's final order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

DATED this __25__ day of March, 2021.

_____
MARK D. CLARKE
United States Magistrate Judge

15   - FINDINGS AND RECOMMENDATION